## MURPHY  v.  PORTRUM.[*]

(*Knoxville.*   November 14,  1895.)

1. PARENT AND CHILD.   *Adoption of illegitimate child.*

A decree for adoption of an illegitimate child which is silent as to legitimation is valid, although the petition stated grounds and prayed for both adoption and legitimation.   (*Post, pp. 608–610.*)

2. DESCENT AND DISTRIBUTION.   *Inheritance from illegitimates.*

The next of kin of the father of an illegitimate child that has been adopted with capacity to inherit, but not legitimated, have no inheritable blood as to such child.   (*Post, pp. 609, 610.*)

Code construed: § 4390 (M. & V.); § 3645 (T. & S.).

Cases cited and distinguished: McKamy v. Baskerville, 86 Tenn., 459; Helms v. Elliott, 89 Tenn., 446.

3. SAME.   *Mother inherits from adopted illegitimate child property descended from the father.*

Property descended from the father to an illegitimate child who has been adopted, but not legitimated, will, like other property of the child, descend, on his death intestate, to his mother in preference to the father's next of kin under the general provisions of § 3273 (M. & V.) Code as to inheritance from an illegitimate child by the mother.   (*Post, pp. 610, 611.*)

Code construed: § 3273 (M. & V.); § 2423 (T. & S.)

Cases cited; Webb v. Webb, 3 Head, 69; Woodward v. Duncan, 1 Cold., 563; Scroggins v. Barnes, 1 Leg. Rep., 58.

---

FROM  HAMBLEN.

---

Appeal from Chancery Court of Hamblen County: WM. McFARLAND, Sp. Ch.

[*] The legal status of adopted children is the subject of annotation to *Warren* v. *Prescott* (Me.), 17 L. R. A., 435.

JAMES G. ROSE and W. S. DICKSON for Murphy.

A. D. HUFFMASTER and SHIELDS & MOUNTCASTLE for Portrum.

WILKES, J.   The very interesting question is presented in this case as to the effect of certain proceedings had in the Circuit Court of Hamblen County, to have Charles J. Portrum adopted and legitimated as the child of John Portrum, the query being whether the property of said Charles J., upon his death without issue, brothers or sisters, went to •his mother, Catherine Noe, or to the brothers and sisters of John Portrum, the adopting parent.

Complainants are purchasers from Catherine Noe, the mother of the said ·Charles J., and the defendants are the brothers and sisters of John Portrum, the adopting father.   The bill was demurred to, and demurrer overruled, the Chancellor being of opinion that the mother inherited the property from her son, and had good title to it.   Defendants refusing to answer or make further defense, final decree was entered, fixing the rights of the parties, and defendants appealed, and assigned errors.

The cause has been heard by the Court of Chancery Appeals, and that Court has affirmed the Chancellor's decree, and defendants have appealed to .this Court.   The facts are that John Portrum died intestate and unmarried, leaving brothers and sisters and other collateral kin, and also Charles J. Portrum, reputed to ˙be his son, and so recognized and

acknowledged by him, the mother being Catherine Noe, an unmarried woman.

John Portrum, at the December term, 1877, of the Circuit Court of Hamblen County, instituted proceedings in that Court to have said Charles J. legitimated and adopted as his lawful heir. Petition was filed, summons issued, and was served on the mother and child, guardian *ad litem* was appointed, and the cause was heard. The decree sets out the petition in full, the substance being that petitioner was desirous of adopting and legitimating said Chas. J., so as to create the relation of parent and child between him and petitioner, the child being then about four years old, and living with its father, and the mother being in poor circumstances, and having relinquished her claims to the custody of the child. The prayer was for a proper judgment of legitimation and adoption, fully legitimating the child, and making it the child of petitioner, by the name of Charles John Portrum, giving to the child all the rights and privileges of a legitimate child, with capacity to inherit and succeed to the real and personal estate of petitioner as his heir and next of kin, and for general relief.

The decree recites that the Court was fully satisfied with the reasons assigned in the petition for the adoption of the child as prayed for in the petition, by the name of Charles John Portrum, and adjudges and decrees that his adoption, as prayed for, be sanctioned by the Court, and proceeds to

vest the child with all the rights and privileges of a child of said John Portrum, with capacity to inherit and succeed to the real and personal estate of said John Portrum as his heir and next of kin in case of his intestacy, and changing his name to Charles John Portrum, etc.

Upon the death of John Portrum, his adopted son, Charles, took possession of his estate, and subsequently died unmarried and intestate and without issue, and his mother, the said Catherine Noe, claims the property against the brothers and sisters of the adopting father, and has sold two pieces of the real estate to complainants, Murphy and Rippetoe.

The first error assigned is that the judgment of legitimation or adoption was not valid, and, second, that, if valid, the mother could not inherit from the child property derived from the adopting parent, but the property would go to the next of kin of the father, John Portrum. There can be no question but that under the Code (M. & V.), §§ 4381, 4385 to 4391, the Circuit Court of Hamblen County had jurisdiction of proceedings to legitimate and adopt children in proper cases; that the parties were properly before the Court by subpœna, and that the decree and record is sufficiently formal to comply with the statutes; but the insistence is that the proceeding in this case was one for legitimation, and not one for adoption, while the decree was for adoption alone.

It will be noted, from recitals heretofore made,

that the petition and prayer was for both legitima-
tion and adoption, and this was proper in the case
of a natural born child; but the decree did not go
to the extent of legitimating, but only adopting,
and we are constrained to hold that this was the
extent of the relief granted, and the child was
adopted, and not legitimated, by the terms of the
decree.    This was, we think, altogether proper
under the petition, which asked for both legitima-
tion and adoption, the Court reciting · that it was
satisfied with the reasons assigned for the desire to
adopt, but making no utterance as to the matter of
legitimation.    The differences between adoption and
legitimation are marked, and, in some contingencies,
far reaching.    By legitimation the child acquires
such a legal status as will enable it to inherit from
its father, and through him from the father's next
of kin, direct and collateral.    Code, § 4387; *Mc-
Kamy* v. *Baskerville*, 2 Pickle, 459.    Whereas, by
adoption he only acquires such legal status as ena-
bles him to succeed to the real and personal estate
of the adopting parent and beyond this gives him
no inheritable right.    He cannot inherit from the
father's next of kin, nor can the father or his next
of kin inherit from such child.    *Helms* v. *Elliott*,
5 Pick., 446; *McKamy* v. *Bakersville*, 2 Pick., 459.

We think that the fact that the petitioner prayed
for more extended relief than the Court saw proper
to grant, will not render void the decree granting
relief prayed for and proper under the facts, even

though not as full and complete as desired. The decree, as rendered, gives the child, by its terms, the capacity to succeed to and inherit the real and personal estate of the adopting father, and this would have been the effect of the decree of adoption under the Code (M. & V.), § 4390, without such recitals. And, by the same section, it is provided that the adoption shall give to the person seeking it no right of inheritance or succession nor any interest whatever in the estate of the person adopted. The child being adopted, and the father dying, the property descended to and vested in the child, and it necessarily follows that in no event could the next of kin of the father inherit from the adopted child, as it had no inheritable blood as to them and they none as to the adopted child. To whom, then, does the property go upon the death of the adopted child? We answer that, under § 3273 (M. & V.), Code, it must go to the mother. That section is as follows: "When an illegitimate child dies intestate, without child or children, husband or wife, his real and personal estate shall go to his mother, if living, then equally to his brothers and sisters by his mother, or descendants of such brothers and sisters." See, also, *Webb* v. *Webb*, 3 Head, 69; *Woodward* v. *Duncan*, 1 Cold., 563; *Scroggins* v. *Barnes*, 1 Legal Rep., 58.

A very learned and elaborate argument is made upon the theory that the mother of the child could not inherit the property derived from the father in such cases, but only such as was acquired by the

Murphy *v.* Portrum.

illegitimate by his own labor or in some way other than inheritance, else the effect will be to divert the property from the inheritable blood of the father to the illegitimate blood of the mother. This is a matter which, if true, addresses itself to the law-making power, and not to the Courts. Much argument is also made upon what the effect would be if the decree had been for legitimation instead of adoption, but this we need not consider under this record, as the child was adopted, but was not legitimated.

There is no error in the decrees of the Chancellor or Court of Chancery Appeals, and they are affirmed with costs.