Ex Parte FRANTUM

[No. 205, October Term, 1956.]

*Decided June 25, 1957.*

The cause was argued before Brune, C. J., and Collins, Henderson, Hammond and Prescott, JJ.

*I. Sewell Lamdin* for the appellants.

*Carl H. Lehmann, Jr., Assistant City Solicitor of Balti-more,* with whom were *Thomas N. Biddison, City Solicitor,* and *Hugo A. Ricciuti, Deputy City Solicitor,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City dismissing the petition of the appellants, Frank H. Frantum and Minnie E. Frantum, his wife, which sought the adoption of an infant, white, male child, Burton Stevens ("Burton").

The child, the illegitimate son of Betty Ann Stevens, was born November 5, 1955. Prior to the birth of Burton his mother voluntarily applied to the Department of Public Welfare ("Welfare Department") for adoption service. Burton was adjudicated to be a dependent child and was committed to the Welfare Department on December 15, 1955. On December 31st he was placed in the home of the appellants for foster care. At the time of his placement and for some time thereafter, Burton was physically in poor condition. He suffered a fracture of the left humerus at birth and was anemic. He also had other physical ills, including bad adenoids and respiratory infections. The appellants nursed him to health, and becoming very attached to him, they asked the Welfare Department for permission to adopt him. This request was refused by the Welfare Department, but the appellants nonetheless filed their petition in the Circuit Court of Baltimore City seeking to adopt him.

The trial court ordered its Probation Division to make an investigation and submit its recommendations as to whether or not to grant the petition for adoption. The Probation Division did so; it favored the adoption, but suggested a hearing in open court since the Welfare Department as legal guardian had refused to give its consent. The hearing was held and shortly thereafter the Chancellor signed an order dismissing the petition. The appeal is taken from this order.

The Chancellor in a "Memorandum of Court" set forth his findings which were the basis of denying the appellants' petition. He found that the arguments and testimony show that the appellants are "fine people, have a good home, and have done an excellent job in raising the child from a sickly child to good health. They are to be commended for that. There is no argument about their fitness as foster parents." He then stated the primary considerations that influenced his decision as follows: "I am influenced by the fact that his

legal guardian [Welfare Department] refuses to consent * * *. Another persuasive element, and unfortunately for the Frantums, is the age of these foster parents. Mrs. Frantum will be forty-eight years of age in the next several months, and Mr. Frantum will be fifty-four years of age within the next several months. While at a good age as foster parents, unfortunately it is not an ideal age as adoptive parents for this infant. * * * When Mr. Frantum is sixty-four years of age and Mrs. Frantum is fifty-eight years of age, this child will be eleven years old. In his adolescence, this child may present problems with which the Frantums at their age may not be able to cope. Younger prospective adopting parents present a better future for him." The Chancellor also stated, as a secondary issue in the case, the question of religious affiliation, saying: "The matter of religion has been brought into the case. A child should be placed, wherever possible, with people of the same religion. This child was born to a woman who professed to be a Catholic and requested that her child be raised a Catholic. The Frantums are of the Lutheran faith * * *. While I have given some consideration to this phase of the case, it was not the determining factor for my conclusion that this petition should be dismissed."

The law is firmly established in this State that in adoption cases such as the one before this Court the welfare and best interest of the child is the primary consideration. *Haney v. Knight,* 197 Md. 212, 218, 78 A. 2d 643, 646, and cases there cited; *Ex parte Anderson,* 199 Md. 316, 322, 86 A. 2d 516.

Adoption in this State is wholly a matter of statute. *Spencer v. Franks,* 173 Md. 73, 195 A. 306; *Falck v. Chadwick,* 190 Md. 461, 59 A. 2d 187. Our adoption law fixes the minimum age for adoptive parents at twenty-one years, but it does not impose a maximum age limit. Code (1951), Article 16, Section 79. The general rule appears to be that under such statutes, advanced age alone will not amount to a disqualification. See 2 *C. J. S., Adoption of Children,* Section 8; *In re Brown's Adoption* (Fla.), 85 So. 2d 617. This also seems implicit in the opinion of this Court in *Ex parte Anderson, supra.* It likewise appears from the opinion in that case that the age of the prospective adoptive parents

is an important factor to be considered in determining what is for the good of the child. This is the view of the Department of Welfare of Baltimore City, as is shown by the testimony of workers in that Department given in this case. Similar views are expressed in the *Proceedings of the Maryland Adoption Conference* of April, 1956, which were published by the State Department of Public Welfare. In a discussion of the subject of "Early Placements", page 12 of the above Proceedings, it is said: "We need young couples for the young infant. The group agreed that flexibility about age was important but acknowledged that there was an age beyond which people should not take a tiny infant. It was agreed that most adoptive parents realize the validity of this. While a lot of people feel young at 40, they can foresee what it will be like to be dealing with an adolescent 15 years later. It was agreed that our age policies need careful interpretation to the community. If we are ready to explore the possibility with each applicant and keep in mind the principle of flexibility, it seems possible to handle the question of age with minimum damage to applicant."

In *Waller v. Ellis,* 169 Md. 15, 179 A. 289, the age of an uncle seeking to adopt a nine-year old, full orphan girl and (presumably) to take her away from the custody of her maternal grandfather, and the ages of the uncle's sister and of his feeble-minded brother who were the only other residents of the uncle's home, were among the reasons, though by no means the only reasons, for reversing a decree of adoption which the uncle had obtained. At the time of institution of the suit in 1931 the uncle was 58 years old, his sister was 60 and the feeble-minded brother was 61. The petitioning uncle was 62 when the case reached this Court.

In the *Anderson* case above cited, a physical ailment of the would-be adoptive mother apparently affected adversely her ability to care for the child. He had been over protected or "babied" to an extent which retarded his development. In the present case there is no such difficulty.

There is, however, the religious preference clause of Section 76. By that Section, "The General Assembly hereby declares its conviction that the policies and procedures for

adoption contained in this subtitle are socially necessary and desirable, having as their purpose the three-fold protection of (1) the adoptive child, from unnecessary separation from his natural parents and from adoption by [an unfit] person * * *, and, (except in Allegany, Garrett and Washington counties), whenever practicable, from adoption by persons of a different religious belief than that of the minor or his parents, unless the natural parent or parents specifically indicate or consent to a different choice; * * *." Though the religious preference clause does not impose an absolute requirement in those portions of the State not excepted from its operation, and though its force may be somewhat weakened by the very fact that three counties (for no stated reason) are excepted from its application, we think that it cannot be disregarded. The evidence shows that the mother of the child professed adherence to the Catholic faith and expressed the desire that the child be brought up in it. It further seems that it is practicable to place the child with younger adoptive parents who are members of the Roman Catholic Church.

We are of the opinion that the same rule should apply to appellate review of the decision of the Chancellor in an adoption case as in a custody case. Hence, where on appeal, the facts are undisputed and plain, this Court must exercise its best judgment in determining whether the conclusion reached by the Chancellor was the best one. See *Butler v. Perry,* 210 Md. 332, 123 A. 2d 453 (a custody case) ; *Burns v. Bines,* 189 Md. 157, 55 A. 2d 487, 57 A. 2d 188 (also a custody case) ; *Ross v. Pick,* 199 Md. 341, 86 A. 2d 463 (decided as a custody case, assuming a decree of another state not to have resulted in a valid adoption) ; *Roussey v. Roussey,* 210 Md. 261, 123 A. 2d 354 (custody in a divorce case).

Custody and adoption cases may present—and certainly the instant case does—serious problems and difficult decisions. The would-be adoptive parents here have nursed the child to health and have thereby (with an ironic result) brought him up to the Department of Welfare's standard for adoption. They have given him full love and affection and the Probation

Department's report shows them to be fine people and recommends that they be allowed to adopt the child. The Department of Welfare, while asserting the religious preference provision of the law and while standing upon its foster home agreement with the Frantums, which purports to prevent their seeking to adopt a child in their care without the consent of the Department, makes its main objection to the adoption on the ground of the age of the petitioners. That, of course, involves no reflection upon their fitness in other respects. (See the letter from the then Director of the Baltimore City Department of Welfare to Judge France quoted in the opinion in *Ex parte Anderson, supra.*)

Looking ahead, as we feel bound to do, we believe that it is to the best interest of this child that he be brought up in the home of parents younger than the petitioners. We also think that the evidence fails to show that it is not practicable to comply with the religious preference clause either because of the absence of prospective adoptive parents of the same faith as the child's mother or because of the paramount best interests of the child. No question has been suggested in this case as to the validity of that clause, and somewhat similar clauses have been regarded as valid in other jurisdictions, though they have not always been found applicable. See, for example, *Gally, Petitioner,* 329 Mass. 143, 107 N. E. 2d 21, and an Annotation entitled *"Adoption—Religion as Factor"* in 23 A. L. R. 2d at 701.

We find it unnecessary to pass upon the Department of Welfare's contention based upon the foster parents' agreement and express no opinion with regard thereto.

One cannot read even the printed record in this case without a feeling of sympathy for the foster parents who have done so much for this child through their love, their work and their care to bring him to health and happiness and who would like to adopt him as their own.

Primarily because of the inexorable fact of their age and its probable (though concededly not certain) effect ten or fifteen years hence, we feel impelled to conclude that an adoption by a younger couple would be better for the child, and to affirm the order appealed from. Our decision will, how-

ever, be without prejudice to the filing of a subsequent petition by the appellants if, despite the expectations of the Department, he is not actually adopted by a younger couple within a reasonable time, which, would in the absence of unusual circumstances, we think be six months after the mandate of this Court is sent to the trial court.

> *Order affirmed, without prejudice*
> *as stated in the opinion herein;*
> *the costs of this appeal to be paid*
> *one-half by the appellants and*
> *one-half by the appellee.*

HAMMOND, J., filed the following dissenting opinion:

Precedents and theories should never control the decision of a custody or adoption case since the answer to the question of what is for the best interests and welfare of the child necessarily depends on judgment applied to a set of facts and circumstances which, like the proverbial will, has no twin brother. In the present case, it seems to me that the Court has disregarded this salutary rule and has paid homage to homilies and made a fetish of formulas.

It is conceded that the would-be adopting parents are, in the words of the investigating probation officer, "good, stable, responsible persons", and in the words of the chancellor, are "fine people" who "have a good home, and have done an excellent job in raising the child from a sickly child to good health." The probation department found that the boy had required a great deal more care and attention than is usually necessary for a normal child "and that he gives every indication of having received excellent care and much love from the petitioners." The probation department pointed out that the second floor apartment of the petitioners' home is occupied by a daughter, Thelma Peters, and her husband and son, and said: "A very close relationship exists between the Petitioners and the Peters family, and the Peters are as devoted to the child sought in adoption as are the Petitioners." The financial position of the petitioners is sound. They have a substantial equity in their home, own their car outright, and

the would-be father is not only employed at a good wage but receives, and will continue to receive, a substantial pension as a retired U. S. Marine.

It is obvious that the ages of a couple who wish to adopt a child are an important consideration. The authorities on the subject themselves emphasize the need of flexibility. In the proceedings of the Maryland Adoption Conference, referred to in the opinion of the majority, it is said: "The group agreed that flexibility about age was important", and again said that "* * * age policies need careful interpretation to the community. If we * * * keep in mind the principle of flexibility, it seems possible to handle the question of age with minimum damage to applicant." In the present case, the probation department recommended that the petitioners be allowed to adopt the child even though their ages were such that normally this would not have been the case. The couple were regarded as young for their ages and as having a youthful outlook. They have been good for the child and the child apparently has been good for them. The Department of Welfare permitted them to have the child for a much longer period than is customary for foster parents, and, so, brought about almost inevitably the growth of a mutual love and affection between the child and the couple he regarded as his father and mother. Added to this was the increased love which they felt for the child because of having nursed him through a series of illnesses from a weak, sickly infant to a healthy, normal child. The prospective parents are sincerely afraid that the child will be seriously hurt if he is taken from them, and the probation department apparently shares that view. There is no reason to believe, apart from the uncertainties which attend human life generally and which would be substantially as great in the case of younger parents, that the petitioners will not be able adequately to care for the boy for the foreseeable future. In addition to this, the Peters family, who are young enough even by the ideal standards of the social workers of the Department of Welfare, are on hand and, in all probability, would take over if for any reason the petitioners became unable to continue to care for the boy. The child is in a happy,

wholesome, loving home and to change that environment for theoretical reasons seems to me to be a completely unnecessary and unjustified experiment, which could very readily cause serious harm to the child.

It would be one thing if the petitioners were seeking to adopt a child that they had never had or cared for. Then the age question properly would be decisive. It is another thing when they have been permitted to care for the child over a long period and have demonstrated that they have both the inclination and the capacity to do so excellently. If there was ever a case where flexibility as to age should be applied, it is this case.

The question of religion would give me very little pause under the circumstances. The requirement in all of the Counties of the State except three that the adoption be by a person of the same religious belief as the minor or his parents "whenever practicable", can hardly be deemed a strong State policy by reason of the exemption of those three Counties. (The rule to be applied might be difficult to find if the adopting parents were outside of the three Counties and the natural parents were within, or vice versa.) In any event, the requirement is not absolute and it is doubtful whether constitutionally it could be made so. Whether it is practicable, in any given case, to require that the adopting parents have the same religious faith as the parents of the child is a matter that must be measured, in the final analysis, by the best interests and welfare of the child. Here the boy was too young to have any religion of his own choice, and his mother seems not to have benefited from hers or to have taken it too seriously since the child who is sought to be adopted was her fifth illegitimate child.

I would reverse the decree and permit the adoption.