OPINION OF THE COURT
Millard L. Midonick, J.
In this adoption proceeding, the natural father of the adoptive child has petitioned to adopt his child, who was born out of wedlock. The case presents a novel question in our State in that the natural mother, who consents to the adoption, seeks to preserve her parental rights and obligations but neither parent intends to marry the other or anyone else.
The facts and adoption statutes must be considered in order to appreciate the dilemma presented by this case. The child was deliberately conceived more than two years after his parents had entered into a long-term, stable relationship. Both parents, however, have decided not to marry because they are convinced “that marriage would be harmful to their family and their relationship.” The parents have shared custody of the child; they live within a few blocks of each other. The child resides most of the time *658 with his mother, but he spends a great deal of time with his father. In addition, the parents spend a great deal of time together and with the child.
Both parents favor the father’s adoption of the child to remove the stigma of his illegitimacy and to permit the child to inherit substantial amounts of property from his father’s ancestors, whose wills and trusts benefit adopted descendants but no illegitimate descendants. Both of these ends are clearly in the best interests of the child. The child’s interests would best be served by granting his father’s petition of adoption without depriving his natural mother of her rights and obligations.
New York’s adoption statute, however, does not appear to apply to the unusual facts of this case. If these natural parents were married there would, of course, be no problem; if a couple, other than the natural parents were married and wanted to adopt this child, there also would be no problem. Even if an unmarried person wanted to adopt this child, the New York statute expressly permits a single person adoption (Domestic Relations Law, § 110). In the ordinary case, adoption by a single person would create no problem since the consenting natural parent would willingly relinquish parental rights and obligations toward the child. Subdivision 1 of section 117 of the Domestic Relations Law provides that “[a]fter the making of an order of adoption the natural parents of the adoptive child shall be relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive child or to his property by descent or succession, except as hereinafter stated.” In our case, however, the natural mother wishes to retain her rights and obligations in and toward the adoptive child. She may not retain such rights by entering into a private agreement with the natural father, for adoption is a State created right not alterable by common-law principles. (“Doe” v “Roe”, 37 AD2d 433, 436.) Moreover, the mother will find no solace in the statute, for the statute explicitly prevents retention of such rights (Domestic Relations Law, § 117, subd 1). Nevertheless, the Legislature has carved an exception to this section that provides for retention of responsibilities and rights so long as the natural parent having lawful custody of the child *659 marries or remarries and consents that the stepfather or stepmother adopt the child.
It is not clear that the Legislature contemplated the situation of adoption by one part of a couple who conceived a child out of wedlock and remain unmarried for personal reasons. While “marriage” is the springboard for the Stepfather-stepmother exception, this legal statute has been broadly construed by at least one court in a sister State to “preserve the rights and relationship between the child and his mother.” (Matter of Adoption by A.R., 152 NJ Super 541, 545.) The New Jersey statute (NJ Stats Ann, § 9:3-30, subd A) is substantially identical to New York’s law and prohibits retention of rights unless the adoptive parent is “stepfather or stepmother [adopting with the] approval of the mother or father.” In Matter of Adoption by A.R., the.petitioning father was the natural father. The mother was an adjudicated incompetent, and therefore, the parents were prevented from legitimizing their relationship through marriage. The court, nevertheless, placed a liberal construction on the stepfather exception on the statute in order to promote its public policy: “namely, the protection of the children and the adoptive and natural parents *** [t]he child should not be adversely affected by this state of affairs.” (Supra, at p 545.) That is very similar to the case here. Society changes and, with it, so do mores. In this era of freedom of choice and equality of rights for both parties, the child should not be denied the privilege of legitimacy as well as the care and concern of his natural mother’s property and her rights of intestacy merely because these adult natural parents refuse to marry. This refusal by them is as compelling as the inability of the couple in Matter of Adoption by A. R. to marry. The refusal by these natural parents to wed should not contravene New York’s policy of fostering the child’s best interests above all else. (Matter of Nehra v Uhlar, 43 NY2d 242; Matter of Malpica-Orsini, 36 NY2d 568, app dsmd sub nom. Orsini v Blasi, 423 US 1042.)
The child’s best interests are served by permitting the natural father to adopt in the same manner as if the petitioning father were the stepfather of the adoptive child by marriage to the natural mother. In addition, the con *660 senting natural mother shall not be relieved of any parental duty toward such child and the natural mother and said adoptive child shall sustain toward each other the legal relationship of parent and child, including the rights of inheritance from and through each other and the natural and adoptive kindred of such consenting natural mother. Finally, the natural parents shall have joint custody of said adoptive child, as they now possess. The birth certificate of the infant is and always has been congruent with this order and no change of name is required.
In addition to the statutory construction enabling adoption and retention of rights by the natural mother, this court possesses equitable power to confer back to the consenting natural mother custodial rights and responsibilities, as well as to her right to inherit from and through her natural child. While the Supreme Court has plenary jurisdiction to determine the custody of all children who reside within New York State, the Surrogate’s Court has “full equity jurisdiction as to any action, proceeding or other matter over which jurisdiction is or may be conferred *** in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.” (SCPA 201, subds 2, 3.) This court has exercised such equity jurisdiction. In Matter of Raana Beth N. (78 Misc 2d 105, 110), this court noted that the “Surrogate’s courts have made determinations awarding custody as incident to (or under the guise of) proceedings for guardianship of minors”. By awarding joint custody to the natural mother and permitting adoption by the natural father, the best interests of the child are served in that the family structure to which he is presently accustomed is preserved. This court shall retain jurisdiction to protect the interests of the adoptive child in the event the parents desire to terminate their relationship for any other reason.
An order of adoption has been signed in accordance herewith.