497 A.2d 142

**Jerry Wayne BRIDGES**

v.

**Beverly Ann NICELY.**

**No. 44, Sept. Term, 1985.**

Court of Appeals of Maryland.

Sept. 10, 1985.

Paul W. Barnett, Cumberland, for appellant.

William J. Trozzo, Cumberland, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Judge.

Maryland Code (1984), §§ 5–307(a) and 5–309(a) of the Family Law Article provide, respectively, that "[a]ny individual, whether a minor or an adult, may be adopted" and "[a]ny adult may petition a court to decree an adoption." [1] The sole question presented in this case is whether Maryland law permits adoption by the natural father of a child born out of wedlock.

## I

On October 3, 1980, a son was born to Beverly Ann Nicely who was then unmarried. The child was named

---

1. Unless otherwise stated, all statutory references are to the Family Law Article.

Jerry Wayne Bridges, Jr.; the birth certificate stated that Jerry Wayne Bridges, Sr. was the child's father. On January 8, 1981, Jerry, Sr. acknowledged in writing that he was the child's father and eleven days later the Circuit Court for Allegany County issued a paternity decree to that effect. The decree granted legal custody of the child to Beverly and required Jerry, Sr. to provide for his son's support. Actual physical custody of the child over the past three years has been with Jerry, Sr. The child's custody is presently the subject of separate court proceedings between the parents.

On July 11, 1984, Jerry, Sr. filed a petition in the Circuit Court for Allegany County to adopt his son. Beverly did not consent to the adoption and moved to have the petition dismissed. The court (Sharer, J.) dismissed the petition on the ground that it was implicit that Maryland's adoption statute which permits "any person" to adopt another does not permit the adoption of one's own natural child. In so holding, the court defined "adoption" as an act by which the legal existence of the relationship of parent and child is established between persons not so related who are strangers in blood, citing *In re Lund's Estate*, 26 Cal.2d 472, 159 P.2d 643 (1945); *Succession of Gambino*, 225 La. 674, 73 So.2d 800 (1954); *Green v. Paul*, 212 La. 337, 31 So.2d 819 (1947); *In re Jaren's Adoption*, 223 Minn. 561, 27 N.W.2d 656 (1947); and *Colpitt v. Cheatham*, 267 P.2d 1003 (Okla. 1954). Jerry, Sr. appealed to the Court of Special Appeals. We granted certiorari prior to consideration of the appeal by the intermediate appellate court to decide the significant issue presented in the case.

## II

As appellant, Jerry, Sr. contends that nothing in the law of this State precludes him from adopting his own child. He maintains that the adoption will accomplish the legitimation of his son and "the creation of a legal relationship that goes far beyond the scope of a paternity decree." Without citation of authority, he asserts that an adoptee's rights to

"inheritance, support and maintenance, social security, pension plans, health insurance, estate administration and possibly even to a draft deferment" are greater than the rights of a child whose paternity has been acknowledged in a paternity proceeding. Appellant also suggests that the adopting party is entitled to greater rights to the adoptee's services and income, to inheritance, and to support and maintenance if the adoptive parent becomes destitute. Appellant also suggests that the natural father is denied paternal benefits and is placed in an inferior legal position to the natural mother in violation of Article 46 of the Maryland Declaration of Rights, commonly known as the Equal Rights Amendment.[2]

In support of the lower court's determination, Beverly argues that a parent may not adopt his or her natural child because adoption is the taking of a child, not related by blood, to be one's own child, with all the rights, privileges and duties of a child and heir. She maintains that the appellant's attempted adoption is without purpose since a person cannot acquire, judicially or otherwise, the right to parenthood which he already possesses. Beverly suggests that if appellant is permitted to adopt their child, she will be divested by operation of law of all her parental rights, duties and obligations, contrary to the State's public policy of not unnecessarily separating a child from a natural parent.

### III

Adoption proceedings, unknown to the English common law, are solely of statutory origin in Maryland. *In the Matter of Malmstedt*, 243 Md. 92, 94, 220 A.2d 147 (1966); *Walker v. Gardner*, 221 Md. 280, 285, 157 A.2d 273 (1960);

---

2. Article 46 provides:
   "Equality of rights under the law shall not be abridged or denied because of sex."

*Falck v. Chadwick*, 190 Md. 461, 467, 59 A.2d 187 (1948).[3] Whether the appellant can adopt his own son thus depends upon the applicable statutory provisions and the legislative intention in their enactment.

As earlier observed, §§ 5–307(a) and 5–309(a), read together, expressly provide that "[a]ny individual ... may be adopted" by "[a]ny adult." Section 5–308(b) specifies that an adopted individual becomes "the child of the petitioner for all intents and purposes; and ... is entitled to all the rights and privileges of and is subject to all the obligations of a child born to the petitioner in wedlock." This section further provides in subparagraph (b) that

"(2) each living natural parent of the individual adopted is:

(i) relieved of all parental duties and obligations to the individual adopted; and

(ii) divested of all parental rights as to the individual adopted; and

(3) all rights of inheritance between the individual adopted and the natural relatives shall be governed by the Estates and Trusts Article."

Section 5–310 defines a child's natural father to include a person adjudicated to be the father of the child or one who has acknowledged himself as such, orally or in writing, and the natural mother agrees that he is the individual's natural father. Section 5–311 provides that unless the natural parents' rights have been terminated by a judicial proceeding, an individual may not be adopted without the consent of both natural parents and the individual to be adopted, if at least ten years old. Section 5–312 permits issuance of a decree of adoption, notwithstanding a lack of consent by the child's natural parent, "to a stepparent, relative, or other individual who has exercised physical care, custody, or

---

**3.** Maryland's first adoption statute was enacted by ch. 244 of the Acts of 1892. It broadly authorized the issuance of an adoption decree, upon the application of any person, declaring any minor child to be the adopted child of the petitioning party.

control of a child for at least 1 year, if by clear and convincing evidence" the court finds that a number of specified criteria have been satisfied, including that "it is in the best interest of the child to terminate the natural parent's rights as to the child." Underlying Maryland's adoption statutes is an express legislative finding in § 5–303(b) that, among other things, the child should be protected from "unnecessary separation from . . . natural parents."

Under Code (1974), § 1–207 of the Estates and Trusts Article, an adopted child "shall be treated as a natural child of his adopting parent or parents." The section further provides that upon adoption, "a child no longer shall be considered a child of either natural parent," except that if the spouse of a natural parent adopts the child, "the child shall still be considered the child of that natural parent." Section 1–208(a) of the Article provides that a child born out of wedlock is considered to be the child of his mother. Such a child is considered the child of the father under § 1–208(b) only if the father

"(1) Has been judicially determined to be the father in an action brought under the statutes relating to paternity proceedings; or

(2) Has acknowledged himself, in writing, to be the father; or

(3) Has openly and notoriously recognized the child to be his child; or

(4) Has subsequently married the mother and has acknowledged himself, orally or in writing, to be the father."

That § 1–208(b) of the Estates and Trusts Article is a legitimating statute is clear from our cases. *Dawson v. Eversberg*, 257 Md. 308, 262 A.2d 729 (1970), involved, as here, an adoption petition filed by a natural father of children born out of wedlock. The father had been adjudicated as such under a paternity decree. The trial court, believing that adoption of the children was necessary to

legitimize them, decreed the adoption, reserving to the mother in the decree all her parental rights. While we assumed, without deciding, that a natural father of an illegitimate child could adopt his own child, we held that that portion of the decree reserving the mother's parental rights was contrary to the adoption statute which terminated the legal relationship between the child and the mother. We expressed doubt that the trial court would have granted the decree had it known that it could not lawfully grant the adoption and, at the same time, preserve the mother's parental rights. In vacating the decree and remanding the case for further consideration, we observed that because of the harsh consequences of a decree of adoption, vis-a-vis parental rights, Maryland law provides that adoption should not be granted over parental objection unless that course is clearly warranted, bearing in mind the welfare and best interest of the child and all just claims of the objecting parent. 257 Md. at 313, 262 A.2d 729. In so disposing of the case, we said that if the only objective of the adoption was the legitimation of the children, what is now § 1–208(b) of the Estates and Trusts Article offered "a less traumatic approach to the problem." *Id.* at 314, 262 A.2d 729. We suggested that certain benefits that would be achieved through the adoption process could more simply be accomplished through legitimation of the child under this section of the statute.

In *Thomas v. Solis,* 263 Md. 536, 283 A.2d 777 (1971), the acknowledged father of an illegitimate child, who wished to protect his visitation rights and to assure entitlement to notice of any attempted adoption of the child, sought a declaratory judgment that he was the child's natural father. Citing *Dawson,* we said that compliance with any of the four methods set forth in § 1–208(b) of the Estates and Trusts Article was sufficient to legitimatize a child. We indicated that a "liberal interpretation" of our legitimation statute was essential; that it was "not limited in its scope and application to matters of inheritance only" but was legally sufficient "to establish other rights, ... arising

from the relationship existing between parent and legit-imate issue," *id.* at 542, 283 A.2d 777; and that the status sought by the father was afforded to him by compliance with the legitimation statute. To the same effect, *see Skeens v. Paterno,* 60 Md.App. 48, 480 A.2d 820 (1984); *State v. Rawlings,* 38 Md.App. 479, 381 A.2d 708 (1978); *Williams v. Williams,* 18 Md.App. 353, 306 A.2d 564 (1973). Other cases have held that § 1–208(b), although contained in an inheritance statute, is not limited to matters of inheri-tance only but is more in the nature of a general legitima-tion statute. *See Davis By Lane v. Schweiker,* 553 F.Supp. 158 (D.Md.1982); *Tyler v. Schweiker,* 530 F.Supp. 1028 (D.Md.1981); *Allen v. Califano,* 452 F.Supp. 205 (D.Md. 1978); *Massey v. Weinberger,* 397 F.Supp. 817 (D.Md.1975). These cases found a child who had been legitimated under the provisions of the statute to be eligible for social security benefits.[4]

A number of states have adopted the Uniform Adoption Act, 9 U.L.A. 20 (1971), which, in § 3, expressly permits an adoption by "the unmarried father or mother of the individ-ual to be adopted."[5]  In the *Malmstedt* case, *supra,* 243 Md. at 94, 220 A.2d 147, we pointed out that "Maryland has not granted specific rights to fathers of illegitimate children in regard to adoption." Some jurisdictions interpreting their adoption statutes have concluded that, absent a statu-tory definition of "adoption," the process was not intended to encompass the adoption of one's own legitimate child but rather only the assumption of a parental relationship to-

---

**4.** Code (1984), § 3–602(a) of the Courts and Judicial Proceedings Article recognizes the jurisdiction of an equity court to determine "the legitimacy of a child, pursuant to § 1–208 of the Estates and Trusts Article." Section 5–1005 of the Family Law Article, entitled "Legiti-mation proceedings," is to the same effect.

**5.** Alas.Stat. § 25.23.010 to 25.23.240 (1984); Ark.Stat.Ann. §§ 56–201 to 56–221 (1983 Cum.Supp.); Mont.Code Ann. §§ 40–8–101 to 40–8–202 (1983); N.M.Stat.Ann. §§ 40–7–1 to 40–7–11, 40–7–13 to 40–7–17 (1983 Repl.); N.D.Cent.Code §§ 14–15–01 to 14–15–23 (1981); Ohio Rev.Code Ann. §§ 3107.01 to 3107.19 (Page 1980); Okla.Stat.Ann. tit. 10, §§ 60.1 to 60.23 (West 1966).

ward the child of another.[6] *Marshall v. Marshall,* 196 Cal. 761, 239 P. 36 (1925); *In re Adoption of Graham,* 63 Ohio Misc. 22, 409 N.E.2d 1067 (1980); *Leake v. Grissom,* 614 P.2d 1107 (Okla.1980); *Gilbertson v. Gilbertson,* 498 P.2d 1381 (Okla.1972); *Baltosser Adoption,* 63 Pa.D. & C. 498 (1948). These cases express concern that if one natural parent is permitted to adopt a child, with or without the consent of the other parent, the latter's parental rights would be severed with possible adverse consequences to the child. They also indicated that there would be no need for adoption by a natural parent of a legitimate child since no benefits, rights, obligations or duties would be imposed or conferred which did not already exist as a result of the natural relationship. Other jurisdictions, interpreting their adoption statutes, have permitted a natural father to adopt his illegitimate child with the consent of the mother. These cases indicate that notwithstanding statutory provisions that adoption severs the other parent's parental rights, the child should not be deprived of such parental relationship in order to be legitimated through the adoption process. Consequently, the cases hold that because there was no legislative intent to sever the mother's rights and responsibilities in such circumstances, the statutory "stepparent" exception would be applied so that the mother's parental rights would be preserved. *See In re Jessica W.,* 122 N.H. 1052, 453 A.2d 1297 (1982); *Matter of Adoption of a Child by A.R.,* 152 N.J.Super. 541, 378 A.2d 87 (1977); *Matter of A.J.J.,* 108 Misc.2d 657, 438 N.Y.S.2d 444 (1981). Still other jurisdictions with statutes similar to our own have concluded that there is no legal impediment in the words of the statute to prohibit a natural parent from adopting his or her illegitimate child. *Petition of Curran,* 314 Mass. 91, 49 N.E.2d 432 (1943); *Murphy v. Portrum,* 95 Tenn. 605, 32 S.W. 633

---

**6.** The trial court in the present case relied upon this principle in dismissing the adoption petition; however, cases cited as authority to support the proposition were not interpreting the reach of adoption statutes in those jurisdictions. In other contexts, the cases cited general definitions of the term "adoption."

(1895); *In re Anonymous Adoption,* 177 Misc. 683, 31 N.Y.S.2d 595 (1941); *Couch v. Couch,* 35 Tenn.App. 464, 248 S.W.2d 327 (1951). These cases indicate that the legitimation of a child under a statute did not necessarily afford the child the same rights as would accrue from adoption. *Cf. Bedinger v. Graybill's Executor and Trustee,* 302 S.W.2d 594 (Ky.1957) (statute authorizing adoption of "any person" by "any adult person" construed without restriction or qualification to permit husband to adopt his wife in order to qualify her for inheritance as his heir at law); *In re Adoption of Berston,* 296 Minn. 24, 206 N.W.2d 28 (1973) (statute permitting adoption of "any person" construed to permit adoption of an adult woman by her natural son in order to qualify her for inheritance as his heir).

## IV

In determining whether Maryland's adoption statutes permit a natural father to adopt his own child born out of wedlock, we seek to ascertain and effectuate the legislative intention, the primary source for which is found in the language of the statute itself. *In re Stephen K.,* 289 Md. 294, 424 A.2d 153 (1981); *Koyce v. State Central Collection Unit,* 289 Md. 134, 422 A.2d 1017 (1980). Of course, when construing one provision of a statute, which is part of a statutory scheme, the legislative intention must be gathered from the entire statute, rather than from only one part. *North Charles Gen. Hosp. v. Empl. S. Adm.,* 286 Md. 115, 405 A.2d 751 (1979); *Height v. State,* 225 Md. 251, 170 A.2d 212 (1961). In other words, where statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope. *Management Personnel Serv. v. Sandefur,* 300 Md. 332, 478 A.2d 310 (1984); *Haskell v. Carey,* 294 Md. 550, 451 A.2d 658 (1982); *Winter v. Director,* 217 Md. 391, 143 A.2d 81 (1958). Another rule of construction is that where the language of a statute is clear, courts may not insert or omit

words to make the statute express an intention not evident in its original form. *Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 453 A.2d 1185 (1982); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 444 A.2d 1024 (1982).

The cornerstone of the Maryland Adoption statute, §§ 5–307(a) and 5–309(a), defining who may be adopted and who may adopt, expresses in broadly worded terms, without qualification or restriction concerning blood relationships, that "[a]ny individual ... may be adopted" by "[a]ny adult." In earlier cases construing qualifications for adoption under the statute, we held in *Ex Parte Libertini,* 244 Md. 542, 224 A.2d 443 (1966) that precursors of these statutory provisions permitted the adoption of an adult by an unmarried adult. The fact that the adult adoption was for purposes of inheritance or may not have served a "useful purpose" was considered irrelevant in light of the statute's broad command. Similarly, in *Ex Parte Frantum,* 214 Md. 100, 133 A.2d 408 (1957), a petition to adopt a one-year-old child by foster parents was opposed due to the advanced age of the petitioning couple. We found no merit to the challenge based on age alone. We said that the adoption statute fixed only the minimum age for adoptive parents and did not impose a maximum age limit.

Professor John S. Strahorn, in his well-regarded article on "Adoption in Maryland," 7 Md.L.Rev. 275 (1943), analyzed the then existing adoption statute which, in its most fundamental provisions, does not materially differ from our present statute. He said:

"The Maryland statute ... recognizes that petitions may be filed by an individual severally, be he or she married, widowed, divorced, or single....

"... [I]n the case of several adoptions there are no limitations on who may adopt. The Maryland statute contains no such rule as is found in the statutes of some other states, requiring the adopter to be older than the adoptee by a stated number of years. In fact, as our

statute reads, one might adopt a person older than himself, even one of his own direct ancestors." *Id.* at 292.
He also observed that

"there may be occasional motive, under Maryland law, for one formally to adopt his own illegitimate child for the purpose of indirectly accomplishing the sequelae of legitimation. One reason for this may be in order to keep secret the fact of original illegitimate relationship." *Id.* at 276–77.

## V

In view of the broad, unqualified wording of Maryland's adoption statute, and the existing uncertainty as to whether, under Maryland's legitimation statute, a legitimated child is placed in precisely the same legal posture as an adopted child, we are unable to conclude that the Legislature intended to prohibit adoption in all circumstances by a natural parent of a child born out of wedlock.[7] We thus do not agree with those cases from other jurisdictions which flatly hold that the adoption process does not contemplate the creation of such a relationship between a child born out of wedlock and its natural parent. We can conceive of instances where such an adoption may have beneficial social consequences beyond those available under the legitimation statute, *i.e.*, the natural father of a child born to his married paramour desires to adopt the child upon the wife's divorce from her husband and later marriage to the child's father. In such circumstances, the "stepparent" exception to the termination of parental rights, set forth in § 1–207 of the Estates and Trusts Article would operate to preserve all the mother's parental rights. There may be instances where

---

7. We note that § 5–1002 of the Family Law Article, dealing with paternity proceedings, sets forth a declaration of legislative policy stating that the purpose of the paternity statute is to secure for children born out of wedlock "as nearly as practicable, the same rights to support, care, and education as children born in wedlock; [and] to impose on the mothers and fathers of children born out of wedlock the basic obligations and responsibilities of parenthood."

the natural mother of an illegitimate child has abandoned the child and the natural father desires to adopt the child, rather than seek its legitimation under the legitimation statute and thereby expose the child's original illegitimacy. Or the natural mother of an illegitimate child may die, or become incompetent, and for like reasons the natural father would wish to adopt the child.

■ In the present case, the appellant, having had custody of the child for at least one year, would be eligible under § 5–312 to adopt without the mother's consent. Under our decision in *Dawson v. Eversberg, supra,* an adoption by a natural parent, if permitted, would result under § 5–308(b) in the other parent being relieved of all parental duties and obligations to the adoptee, as well as divestiture of all parental rights. In view of these drastic consequences, and of the legislative policy to not unnecessarily separate children from natural parents, § 5–312 requires "clear and convincing evidence" where a parent does not consent to the adoption, that it is in the best interests and welfare of the child to terminate the natural parent's rights as to the child. Other factors taken into account under § 5–312 are:

"(2) the child has been out of the custody of the natural parent for at least 3 years;

(3) the child has developed significant feelings toward and emotional ties with the petitioner; and

(4) the natural parent:

(i) has not maintained meaningful contact with the child during the time the petitioner has had custody despite the opportunity to do so;

(ii) has repeatedly failed to contribute to the physical care and support of the child although financially able to do so; or

(iii) has been convicted of child abuse of the child.

(c) *Considerations.*—In determining whether it is in the best interest of the child to terminate a natural

parent's rights as to the child under this section, the court shall request:

    (1) an investigation by an appropriate agency; and

    (2) a report of the investigation that includes summaries of:

        (i) the child's feelings toward and emotional ties with the child's natural parents, the child's siblings, the petitioner, and any other individual who may significantly affect the child's best interest;

        (ii) the child's adjustment to home, school, and community; and

        (iii) if the natural parent is absent, an evaluation of the petitioner's attempts to locate the absent natural parent."

Manifestly, the statutory criteria are intended to be difficult to satisfy. As we said in *Dawson, supra,* 257 Md. at 313, 262 A.2d 729, the adoption must be "clearly warranted." Or, as we stated in *Walker v. Gardner,* 221 Md. 280, 284, 157 A.2d 273 (1960), adoption "shall not be granted over parental objection unless that course clearly is justified." To the same effect, *see Lippy v. Breidenstein,* 249 Md. 415, 240 A.2d 251 (1968); *Beltran v. Heim,* 248 Md. 397, 236 A.2d 723 (1968); *In the Matter of Malmstedt,* 243 Md. 92, 220 A.2d 147 (1966); *Ex Parte Frantum,* 214 Md. 100, 133 A.2d 408 (1957).

We thus conclude that the trial court erred in dismissing the petition. On remand, it must consider the petition on its merits, taking into account all statutory requirements in assessing among other things, whether it is in the best interests of Jerry, Jr. to grant the adoption and thus terminate all of his parental ties to his mother.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR ALLEGANY COUNTY FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION; COSTS TO ABIDE THE FINAL RESULT.