IN RE ADOPTION OF GRAHAM.

(Nos. 80 A 4 and 80 A 5—Decided April 10, 1980.)

Court of Common Pleas of Ross County, Probate Division.

*Mr. James E. Barrington,* for petitioner.

RADCLIFFE, J.   The natural mother of two children filed petitions to adopt her own children and to change their name to her maiden name.

The natural and legal father of the children filed his consent to the adoptions.

Petitioner offered into evidence a copy of a journal entry wherein she received $600 in exchange for "her right to receive payment for child support***from Roger W. Edler." (the natural father.)

The entry further recites that the father "relinquishes and foregoes any parental right and privilege associated with the children***."

The issues presented by the petitions are two-fold:

1. Whether or not the mother of a child may adopt her own child with the consent of the father, after a dissolution of their marriage; and

2. Whether or not such an adoption is in the best interest of the child as a matter of law.

"***Adoption may be defined as a legal proceeding whereby the relationship of parent and child is created between persons who are not so related by nature, whereupon the person adopted becomes the legal heir of his or her adopter, and the rights and duties of domestic relation with its natural parents are terminated." 1 Ohio Jurisprudence 2d 628, Section 1.

"The policy of Ohio in permitting adoptions, prescribing the procedure therefor, and declaring the effect thereof, has been stated in statutes. Changes in the law have been made from time to time. The desire to assume by adoption the obligation of the custody, support, and rearing of a child to which one otherwise is under no legal duty is most commendable. *Id.,* at page 629, Section 2.

R. C. 3107.15 (effect of adoption) reads:

"(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, *to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed,* which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship;

"(2) To create the relationship of parent and child be-

tween petitioner and the adopted person, *as if the adopted person were a legitimate blood descendant of the petitioner,* for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect."

R. C. 3107.14 (final decree of adoption) provides:

"(C) If at the conclusion of the hearing the court finds that the required consents have been obtained or excused and that *the adoption is in the best interest of the person to be adopted,* it may issue a final decree of adoption or issue an interlocutory order of adoption * * * ."

The sound public policy of this legislation is certainly no longer open to debate. The adoption laws are founded upon broad humanitarian principles which in their operation strengthen the social fabric at points where it was formerly weak indeed. Parentless children and childless parents are offered through them the avenue to a new happiness which might have been closed to them forever under the old order. Children of parents who through adversity or infirmity are unable to provide them with the necessaries of life are also given comfortable homes and a brighter future by foster parents who are willing and able to provide for them.

The situation is one, however, in which even a kind impulse must be regulated or even restrained. Obviously, the welfare of the child must be considered lest misfortune occur to him notwithstanding the good intentions of those who seek to adopt him.

R. C. 2111.08 (parents are natural guardians) provides:

"The wife and husband are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare, and education and the care and management of their estates. The wife and husband have equal powers, rights, and duties and neither parent has any right paramount to the right of the other concerning the custody of the minor, the control of the services or the earnings of such minor, or any other matter affecting the minor; provided that if either parent, to the exclusion of the other, is maintaining and supporting the child, such parent shall have the paramount right to control the services and earnings of the child. Neither

parent shall forcibly take a child from the guardianship of the parent entitled to its custody.

"In case the wife and husband live apart, the court may award the guardianship of a minor to either parent, and the state where the parent having the lawful custody of the minor resides has jurisdication to determine questions concerning the minor's guardianship."

Parents of minor children cannot absolve themselves from the duty imposed upon them by law to support and maintain their minor children by making an agreement among themselves for the payment of an amount which later proves inadequate for that purpose. The duty of a father to support his minor children is a duty he owes to the state, and he cannot relieve himself of this duty by a contract with the mother. However, as between himself and the mother, a father can, by agreement, relieve himself from *liability to the mother* for payment for the support of their minor child.

The granting of this adoption would confer no additional rights, privileges, or benefit upon the children. The termination of the legal relationship between the children and their natural and legal father would eliminate that inheritance and the responsibility of the father to support, maintain, and educate his minor children which he shares with the natural mother.

Sound public policy dictates that the adoption statutes should not be construed to allow the natural mother to adopt her own minor children, when the children have not attained the age of individual consent, notwithstanding consent and approval of the natural father.

Such adoption is not in the best interest of such children and the petitions are therefore denied.

*Petitions denied.*