642 A.2d 324

**Dorothy Mae GREEN**

v.

**Meg SOLLENBERGER.**

**No. 1531, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 9, 1994.

Judith S. Stainbrook, Westminster, for appellant.

Wendy J. Greenberg, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellee.

Argued before BLOOM, WENNER and CATHELL, JJ.

BLOOM, Judge.

Appellee, Meg Sollenberger, Executive Director of the Child Support Enforcement Administration for the State of Maryland (the State), filed a declaratory judgment action in the Circuit Court for Carroll County, seeking an annulment of an adoption decree that permitted appellant, Dorothy Mae Green, to adopt the three minor children who had been born to her and her first husband during their marriage. Appellee moved for summary judgment, and the circuit court granted her motion, determining that, as a matter of law, the adoption decree was void *ab initio*. Appellant raises the following issues in this appeal from that judgment:

I. Whether Maryland law permits adoption by a natural mother of her own legitimate children, under Maryland's adoption statute.

II. Whether a decree of adoption may be vacated when more than one year has passed since its entry, absent a showing of fraud, mistake, or irregularity.

### Statement of Facts

Appellant married David Brian Lenick in 1975. Three children were born to them during their marriage: Thomas, born 29 September 1979, and Sara and Andrew (twins), born 29 August 1980. In March 1980, the couple separated, and appellant found it necessary to apply for public assistance under AFDC (Aid for Families with Dependent Children), pursuant to Md.Code (1957, 1991 Repl.Vol.) Art. 88A, § 44A. On receipt of public assistance, appellant assigned to the State

of Maryland her right to obtain child support from Mr. Lenick.

When appellant obtained a divorce from Mr. Lenick in June 1983, the Circuit Court for Baltimore County awarded custody of all three children to appellant and ordered Mr. Lenick to pay child support. In 1985, appellant married Mark James Green.

In May 1990, appellant applied again to the State for AFDC. On 15 April 1991, she filed a URESA (Maryland Uniform Enforcement of Support Act (Md.Code (1984, 1921 Repl.Vol.) Family Law Article § 10–301 through § 10–340) complaint and affidavit in order to allow the State to collect child support from Mr. Lenick in Pennsylvania. One month later, appellant filed in the Circuit Court for Carroll County a petition for adoption of her three children. Appellant's second husband, Mr. Green, did not join in the petition for adoption.

After the adoption petition was filed, Mr. Lenick signed a "Consent with Waiver" form. The children, without representation by independent counsel, also executed consent forms.

On 3 September 1991, the circuit court entered an adoption decree declaring appellant to be, by adoption, the parent of her natural and legitimate children and changing the last name of the children from Lenick to Green. Since the status of appellant as mother of the three children was precisely the same after the decree as it was before the decree, the only effect of the adoption decree was the severance of the parental relationship, rights, and obligations of Mr. Lenick.

Even after the entry of the adoption decree, Mr. Lenick paid child support payments to the State, and the State sent AFDC assistance to appellant. Almost one year later, after Mr. Lenick had been jailed several times in Pennsylvania pursuant to a URESA action, he filed a petition in a Pennsylvania court, seeking to be released from his obligation to pay support. He argued that the adoption by appellant of their three children relieved him of any parental duties. At the request of the State of Maryland, the Pennsylvania court

stayed the support order so that a Maryland court could determine whether the adoption decree was valid.

On 30 March 1993, appellee instituted the declaratory judgment action that is the subject of this appeal.

## Analysis

The current adoption statutes are contained in Md.Code (1984 & Repl.Vol.1991), Title 5, Subtitle 3 of the Family Law Article (FL). FL § 5–307 provides that any individual, whether a minor or an adult, may be adopted; FL § 5–309 allows any adult to petition a court to decree an adoption. The question before this Court is whether, despite this broad, all inclusive, language, these statutes permit a natural parent to adopt her own minor children that were born to her and her former husband during their marriage.

To answer this question, we must look not only to the language of these statutes, but also to the legislative intention behind them. As the Court of Appeals stated in *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590 (1992):

While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body.... The Court will look at the larger context, including the legislative purpose, within which statutory language appears.

The legislative purposes of Maryland's adoption law is set forth in FL § 5–303(b), which states:

(b) *Purposes of subtitle*—The purposes of this subtitle are to protect:

(1) children from:

(i) unnecessary separation from their natural parents; and

(ii) adoptions by individuals who are unfit for the responsibility;

(2) natural parents from a hurried or ill considered decision to give up a child; and

(3) adoptive parents:

(i) by providing them information about the child and the child's background; and

(ii) from a future disturbance of their relationship with the child by a natural parent.

In *Bridges v. Nicely*, 304 Md. 1, 12, 497 A.2d 142 (1985), the Court of Appeals, construing FL §§ 5–307 and 309, held that an illegitimate child, born out of wedlock, may be adopted by its natural father, which would terminate the natural mother's parental rights. The Court based its decision in part on the broad, unqualified language of §§ 5–307 and 309, but focused more closely on the additional rights that adoption may create for a child that are not available under Maryland's legitimation statute, Md.Code (1974 & Repl.Vol.1991), § 1–208(b) of the Estates and Trusts Article. *Id.*, 304 Md. at 1–12, 497 A.2d 142; *see also* FL § 5–1005(a).

The Court cited examples of situations in which a natural father would have to turn to the adoption statute to protect his child:

[T]he natural father of a child born to his married paramour desires to adopt the child upon the wife's divorce from her husband and later marriage to the child's father. In such circumstances, the "stepparent" exception to the termination of parental rights, set forth in § 1–207 of the Estates and Trusts Article would operate to preserve all the mother's parental rights. There may be instances where the natural mother of an illegitimate child has abandoned the child and the natural father desires to adopt the child, rather than seek its legitimation under the legitimation statute and thereby expose the child's original illegitimacy. Or the natural mother of an illegitimate child may die, or become incompetent, and for like reasons the natural father would wish to adopt the child.

*Id.* at 12–13, 497 A.2d 142.

In the present case, involving legitimate minor children, there are no social benefits those children did not already

possess as the legitimate children of their natural mother that would accrue to them as a result of adoption. Appellant's relationship to her children was precisely the same after adoption as before. She is, as she was, their mother. But allowing appellant to adopt her children may be detrimental to the children because adoption would terminate their filial relationship to their father. Although at present Mr. Lenick has not paid child support regularly and has been jailed for failure to pay his obligations, in the future it is possible he may acquire some degree of wealth. Were the children to be adopted during their minorities, they would lose all rights to obtain support from their father. Adoption would also deprive the children of their right to inherit from their father.

We understand *Bridges v. Nicely, supra,* to mean that, despite the broad, unqualified language of Maryland's adoption statue, it was not the intention of the Legislature that *any* individual may be adopted by *any* adult, totally without qualification or restriction concerning blood relationships. Had the Court of Appeals been of the opinion that §§ 5–307(a) and 5–309(a) were intended to mean exactly what they say, the Court would hardly have found it necessary to consider the possible beneficial consequences of the adoption of an illegitimate child by that child's natural father. We do not believe that the Legislature intended that a minor child born of and during a valid marriage could be adopted by one of that child's parents in order to terminate the relationship between the child and his or her other parent. It would be contrary to the first, and one of the principal, objectives of the adoption law—to protect the child from unnecessary separation of the adoptive child from his or her natural parents—without fulfilling any of its other objectives.

Our answer to the first issue raised by appellant, therefore, is "No." Maryland's adoption statute does not permit adoption by a natural parent of his or her own legitimate child, at least not during that child's minority. Accordingly, the decree of adoption obtained by appellant in September 1991 was a nullity. Our answer to appellant's second issue, therefore, is

that the decree, being void *ab initio,* was subject to collateral attack and could be set aside at any time.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.