656 A.2d 773

**Dorothy Mae GREEN**

v.

**Meg SOLLENBERGER.**

**No. 102, Sept. Term, 1994.**

Court of Appeals of Maryland.

April 12, 1995.

Judith S. Stainbrook, Westminster, for petitioner.

Catherine M. Shultz (J. Joseph Curran, Jr., Atty. Gen., Wendy J. Greenberg, Asst. Atty. Gen., all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, CHASANOW, KARWACKI, BELL, and RAKER, JJ., and JOHN F. McAULIFFE (Retired), Specially Assigned.

MURPHY, Chief Judge.

The principal issue before us in this case is whether Maryland's adoption law allows a natural parent to adopt her own legitimate children. If such an adoption, although not authorized by law, was nevertheless the subject of a final decree, we must also decide whether its legitimacy can properly be challenged in light of Maryland Code (1984, 1991 Repl.Vol.) § 5–325 of the Family Law Article, which provides that "[a] court may not receive a petition to invalidate a final decree of adoption because of a procedural or jurisdictional defect unless the petition is filed within 1 year after the entry of the final decree of adoption."[1]

## I.

The concept of adoption did not exist at common law; hence, it is purely a creation of statute. *Beckman v. Boggs*, 337 Md. 688, 691, 655 A.2d 901 (1995). The Maryland General Assembly has enacted a comprehensive statutory scheme governing adoption; it is codified as Code, §§ 5–301 through 5–330 of the Family Law Article. *Id. See also Stambaugh v. Child Support Admin.*, 323 Md. 106, 110, 591 A.2d 501 (1991); *In re Adoption No. 9979*, 323 Md. 39, 58, 591 A.2d 468 (1991); *Carroll County v. Edelmann*, 320 Md. 150, 171–72, 577 A.2d 14 (1990). In this regard, we have said that " 'the measure of the chancellor's authority [in an adoption proceeding] is the [adoption] statute.' " *In re Adoption No. 9979, supra,* 323 Md. at 58, 591 A.2d 468 (quoting *Spencer v. Franks*, 173 Md. 73, 81, 195 A. 306 (1937)). *See also Board of Education v. Browning*, 333 Md. 281, 286, 635 A.2d 373 (1994) ("In Maryland, the general rule is that there can be no adoption except under and in accordance with a statute."); *Dawson v. Evers-*

---

1. Unless otherwise indicated, all statutory references are to the Code (1984, 1991 Repl.Vol.), Family Law Article.

*berg,* 257 Md. 308, 312, 262 A.2d 729 (1970). The following provisions of the current adoption statute are implicated in the instant case. First, the policies and procedures underlying the adoption statute are deemed to be socially necessary and desirable. § 5–303(a). *See also Beckman, supra,* 337 Md. at 691, 655 A.2d 901. One of the stated objectives of the statute is to protect children from "(i) unnecessary separation from their natural parents; and (ii) adoption by individuals who are unfit for the responsibility." § 5–303(b)(1). Another fundamental purpose of the adoption law is to foster the creation of familial affiliations where they did not formerly exist.

■ According to §§ 5–307(a) and 5–309(a) respectively, "[a]ny individual, whether a minor or an adult, may be adopted" by "[a]ny adult." The legal effect of the entry of an adoption decree is that

"(1) the individual adopted:

(i) is the child of the petitioner for all intents and purposes; and

(ii) is entitled to all the rights and privileges of and is subject to all the obligations of a child born to the petitioner in wedlock;

(2) each living natural parent of the individual adopted is:

(i) relieved of all parental duties and obligations to the individual adopted; and

(ii) divested of all parental rights as to the individual adopted; and

(3) all rights of inheritance between the individual adopted and the natural relatives shall be governed by the Estates and Trusts Article."

§ 5–308(b). According to this provision, an adoption decree endows the adopted child with the status of a natural child of the adoptive parents and bestows upon the adoptive parents all the rights and obligations of a natural parent. *Beckman, supra,* 337 Md. at 698, 655 A.2d 901.

■ The primary consideration in adoption proceedings is the best interest of the child. As we have so frequently held:

"[T]he controlling factor, or guiding principle, in both custody and adoption cases is not the natural parents' interest in raising the child, but rather what best serves the interest of the child; the paramount consideration is what will best promote the child's welfare, a consideration that is of 'transcendent importance.' "

*Petrini v. Petrini*, 336 Md. 453, 469–70, 648 A.2d 1016 (1994). *See also In re Adoption No. 10941*, 335 Md. 99, 113–14, 642 A.2d 201 (1994); *In re Adoption No. A91–71A*, 334 Md. 538, 561, 640 A.2d 1085 (1994).

## II.

Petitioner Dorothy Mae Green (Green) and David Brian Lenick (Lenick) were married on April 21, 1979. They had three children: Thomas Weston, born on September 29, 1979, and Sarah Leeann and Andrew Ryan (twins), born on August 29, 1980. The couple separated in March of 1980. They were subsequently divorced on June 6, 1983. The court awarded Green custody of the three children, which she has retained continuously since then except for about a year between 1987–1988 when the children resided with Lenick. The court further ordered Lenick to pay child support in the amount of $50.00 per week.

Throughout the years following the couple's separation and divorce, Lenick was consistently behind in his child support payments, accruing substantial arrearages over time. Since 1990, Green has received Aid for Families with Dependent Children (AFDC) from Maryland to help her support her children. *See* Code (1957, 1991 Repl.Vol.) Art. 88A, § 44A. To receive public assistance, Green was required to assign her right to obtain child support payments from Lenick to the State. Over the years, Maryland's Child Support Enforcement Administration (CSEA) attempted to compel Lenick, currently a Pennsylvania resident, to satisfy his child support obligation with little success. The State lodged wage attach-

ments with Lenick's employers, which were enforced by the Pennsylvania courts pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) codified as Code, §§ 10–301 through 10–340 of the Family Law Article.

In May of 1991, Green filed a petition in the Circuit Court for Carroll County to adopt her three legitimate children. Lenick consented to the adoption as did the three children. On September 3, 1991, the court entered a final adoption decree naming Green as the children's sole parent and changing the children's surname from Lenick to Green.[2] Even after entry of the final decree of adoption, Lenick continued paying child support to the State and the State continued sending AFDC payments to Green. About a year later, however, Lenick filed a petition in a Pennsylvania court, seeking to be relieved of his obligation to pay child support due to the fact that his children had been adopted by their mother. On November 25, 1992, the Pennsylvania court suspended Lenick's child support obligation. At Maryland's request, the Pennsylvania court stayed the suspension on February 3, 1993, pending a Maryland court's determination as to whether the adoption decree was valid.

In March, 1993, Respondent Meg Sollenberger, the Executive Director of CSEA (the State), filed a Complaint for Declaratory Judgment in the Circuit Court for Carroll County, seeking to have the adoption of the children vacated on the ground that its entry was contrary to both the law and public policy of Maryland. The parties filed motions for summary judgment; they agreed that there was no genuine dispute as to any material fact in the case and that summary judgment was appropriate under the circumstances to decide the question of whether, as a matter of law, a natural parent may adopt her legitimate children in order to terminate her former spouse's parental rights. *See* Maryland Rule 2–501. The

---

2. In April of 1985, Green married a man named Mark James Green. The Greens have one child together, Michael, who was born on January 12, 1983. Mr. Green did not join in his wife's petition to adopt her three children.

court (Beck, J.) granted the State's motion and vacated the adoption, declaring it void *ab initio*. In so concluding, the court stated that "the complaint for adoption failed to allege that substantial social benefits would accrue to the children if the petitioner were to proceed with an adoption and that those social benefits would not accrue by proceeding under rules for a lesser judicial remedy."

On appeal to the Court of Special Appeals, the judgment was affirmed. *Green v. Sollenberger*, 100 Md.App. 686, 642 A.2d 324 (1994). The intermediate appellate court held that "despite the broad, unqualified language of Maryland's adoption statute, it was not the intention of the Legislature that *any* individual may be adopted by *any* adult, totally without qualification or restriction concerning blood relationships," and it determined that Maryland's adoption statute does not authorize a natural parent to adopt her own legitimate children for the purpose of terminating the relationship between the children and their other natural parent. *Id.* at 691, 642 A.2d 324 (emphasis in original). It further held that the adoption decree, being void *ab initio*, could be collaterally attacked and invalidated at any time. *Id.* at 691–92, 642 A.2d 324. We granted certiorari to consider the important issues raised in this case.

## III.

■ Green argues that a natural parent should be permitted to adopt her own legitimate children, maintaining that such an action would not be violative of Maryland law or public policy. She claims that Maryland's adoption statute places very few qualifications on who may adopt whom. She points to the words of §§ 5–307(a) and 5–309(a) that "[a]ny individual, whether a minor or an adult, may be adopted" by "[a]ny adult." She contends that *Bridges v. Nicely*, 304 Md. 1, 497 A.2d 142 (1985), is dispositive authority for her position. In that case, we held that a natural father may adopt his biological children, born out of wedlock, in order to legitimate them.

Green argues that the fact that the children in *Bridges* were illegitimate, and hers are not, is not sufficient to distinguish the two cases. She submits that in *Bridges* we made a comprehensive review of the law of other jurisdictions as to who may be adopted by whom and we determined that "[i]n view of the broad, unqualified wording of Maryland's adoption statute ... we are unable to conclude that the Legislature intended to prohibit adoption in all circumstances by a natural parent of a child born out of wedlock." *Id.* at 12, 497 A.2d 142. Green contends that the circuit court erroneously interpreted this holding when it stated that "[i]t is clear ... that the [*Bridges*] court ruled that the legislature intended to prohibit natural parents from adopting natural children in *most* circumstances."

Green also posits that because we held in *Edelmann, supra,* that the only two means for terminating a person's parental rights are through either a guardianship or an adoption proceeding, and since guardianship is clearly inapplicable in this situation, adoption was the only viable alternative for her to pursue under the circumstances.[3] Green maintains that it is the State's position that the adoption in this case is invalid because there was no one there to take Lenick's place after his parental rights were terminated. This argument is without merit, Green says, because it would mean that a single person could never adopt. In this regard, she directs attention to § 5–309(b), which expressly states: "A court may not deny a petition for adoption solely because the petitioner is single or

---

3. In *Edelmann, supra,* 320 Md. at 175–76, 577 A.2d 14, we held: "The only express statutory authorization for a court to terminate parental rights and obligations short of adoption is contained in Fam.Law art. §§ 5–313 and 5–317 ... Absent specific statutory authorization which does not now exist in this State, a circuit court has no authority to terminate a parental relationship other than through a decree of adoption or guardianship under title 5, subtitle 3 of the Family Law article."
*See also* §§ 5–313 and 5–317. Only the executive director of a child placement agency or an attorney on behalf of the child may file a petition for the agency to be granted guardianship. § 5–317(b).

does not have a spouse." *See also Ex parte Libertini*, 244 Md. 542, 224 A.2d 443 (1966).

Green further asserts that this adoption is in her children's best interest. She claims that it does not involve an "unnecessary separation" of her children from their father, against which the adoption law protects, without fulfilling any of its other objectives. Green contends that the separation is necessary, and thus proper, because it was agreed to by her, Lenick, the children, and the circuit court in 1991. She further argues that the adoption fulfills at least one of the statute's objectives in that it protects her, the "adoptive" parent, from a future disturbance of her relationship with the "adopted" children by Lenick, their natural father. *See* § 5–303(b)(3)(ii). She suggests that the adoption also protects her children from having to support their father in the future if he ever becomes destitute. *See In re Adoption/Guardianship Nos. 2152A, 2153A, 2154A In the Circuit Court for Allegany County*, 100 Md.App. 262, 281, 641 A.2d 889 (1994) (holding that "[u]nder Maryland law, an adult child who has or is able to earn sufficient means is legally obligated to support a destitute parent, and is subject to criminal penalties for failing to do so.") In this vein, Green urges that her children are not really losing anything by having their father's parental rights terminated because he has not been fulfilling his child support obligation, in any meaningful way, for most of their lives.

Finally, Green contends, with reliance upon the provisions of § 5–325, that final decrees of adoption, even if found to be technically invalid, may not be vacated more than one year after their entry in order to protect adoptive parents from a disruption of their new familial relationship by dissatisfied natural parents and thus insure the finality of adoption proceedings. Green explains that because a final decree in her children's adoption·case was enrolled more than one year before it was challenged, "[a]bsent fraud or an irregularity not encompassed within 'any jurisdictional or procedural defect,' the court is without authority to strike [it]." *Weinschel v. Strople*, 56 Md.App. 252, 264, 466 A.2d 1301 (1983). According to Green, the necessary fraud or irregularity described in

*Weinschel* did not exist in the instant case, hence the adoption must stand. Finally, she insists that this adoption should not be found void *ab initio* as occurred in *Venables v. Ayres,* 54 Md.App. 520, 459 A.2d 601 (1983).

## IV.

■ As we earlier observed, §§ 5–307(a) and 5–309(a) provide that "[a]ny adult may petition a court to decree an adoption" of "[a]ny individual, whether a minor or an adult." We hold that despite the broad and seemingly unqualified language used in these provisions, the General Assembly never intended for natural parents to be permitted to adopt their own *legitimate* children. As previously mentioned, one of the principal objectives of the Legislature in establishing a comprehensive statutory scheme to govern adoption, replete with procedures that must be adhered to in every adoption proceeding, was to protect children from "(i) unnecessary separation from their natural parents; and (ii) adoption by individuals who are unfit for the responsibility." *See* § 5–303(b)(1). The separation of the Green children from their natural father in this case was unnecessary, especially since it served no identifiable purpose other than to permanently shut Lenick out of his children's lives.[4] In addition, it is apparent from Green's reliance on the State for help in supporting her family that she alone is not capable of providing for her children's needs. Hence, the goals set forth in § 5–303(b)(1) would not be furthered by allowing the adoption in the instant case to stand.

■ Another primary purpose of adoption is to create a legal connection between an adoptive parent and child who are not biologically related, thereby conferring on each legal

---

4. We have repeatedly held that "adoption decrees cut the child off from the natural parent, who is made a legal stranger to his offspring." *In re Adoption No. 10941, supra,* 335 Md. at 113, 642 A.2d 201 (quoting *Walker v. Gardner,* 221 Md. 280, 284, 157 A.2d 273 (1960)). *See also Logan v. Coup,* 238 Md. 253, 256–57, 208 A.2d 694 (1965) (concluding that "adoption decrees bring to an end the legal relationship of parent and child").

rights and obligations that did not previously exist between them. According to § 5–308(b)(1), after a decree of adoption is entered, "(1) the individual adopted: (i) is the child of the petitioner for all intents and purposes; and (ii) is entitled to all the rights and privileges of and is subject to all the obligations of a child born to the petitioner in wedlock." This provision purports to endow adopted children with an altered status as a result of the adoption, the objective being to add, or at least to substitute, a new legal relationship in place of the old one.

In the present case, however, no new rights or obligations attach as a result of the adoption. The children acquired no additional social benefits following the adoption that they did not already possess as Green's legitimate children. Both before and after the adoption, the Green children were "entitled to all the rights and privileges of and [were] subject to all the obligations of a child born to the petitioner [Green] in wedlock"; hence, the status of the parties was in no way enhanced, nor was their legal relationship altered. Indeed, as the Court of Special Appeals has so well stated, "adoption does not confer upon the adopted child *more* rights and privileges than those possessed by a natural child." *Hall v. Vallandingham*, 75 Md.App. 187, 192, 540 A.2d 1162 (1988) (emphasis in original).

As we see it, instead of acquiring some elevated legal status, the children's situation was actually adversely affected by the adoption. The only real effect of the adoption decree was to relieve the children's natural father of all his parental duties and obligations to them and to divest him of all his parental rights. *See* § 5–308(b)(2). As a consequence, there was no one to step in and take Lenick's place in the children's lives and to assume the responsibility of providing for their support, as a result of which: 1) the children lose any support that they may currently be receiving from their father; 2) they forfeit any right to such support in the future; 3) they lose their right to take by intestacy from and through their father; 4) they forfeit the right to bring a wrongful death action on the father's behalf upon his untimely death; and, finally, 5) they

lose the opportunity to have any sort of filial relationship with their father, both now and in the future.

Green, by failing to join her new husband in the adoption petition,[5] has effectively left her children fatherless and thereby deprived them of the only other person in their lives, besides herself, who was legally responsible for their support and well-being and, in doing so, may have passed some part of the financial burden of caring for her children on to the State. That the State has a strong interest in requiring a responsible parent to support his or her child is patently clear; otherwise, the State could be responsible in whole or in part for the support of a minor child, even though a parent is financially able to meet those obligations. *Lieberman v. Lieberman,* 81 Md.App. 575, 588, 568 A.2d 1157 (1990). This is clearly against public policy and such a misuse of the adoption statute will not be allowed.

In *Bridges v. Nicely,* 304 Md. 1, 497 A.2d 142 (1985), we held that a father could adopt his own natural child, born out of wedlock, in order to legitimate the child. While we based our decision in *Bridges,* in part, on the expansive language of §§ 5–307 and 5–309, we focused primarily on the additional rights that adoption may afford a child that are not available under Maryland's legitimation statute, codified as Code (1974, 1991 Repl.Vol.) § 1–208(b) of the Estates and Trusts Article. We found that the child acquired greater rights as an adopted child than had the child merely been acknowledged under the legitimation statute. We held that § 1–208(b) may not place a legitimated child "in precisely the same legal posture as an adopted child" and thus we were "unable to conclude that the Legislature intended to prohibit adoption in all circumstances by a natural parent of a child *born out of wedlock.*" *Id.* at 12, 497 A.2d 142 (emphasis added). Had we thought that the Legislature intended that the words of §§ 5–307 and 5–309 be

---

5. Green was required, by law, to do this and doing so would have completely done away with the problem with which we are now faced. *See* § 5–315(a) (providing that "[i]f a petitioner for adoption is married, the petitioner's spouse shall join in the petition.")

afforded their exact literal meaning, we would not have found it necessary to discuss the possible beneficial consequences of the adoption of an illegitimate child by the natural father, as we did in *Bridges*. The situation before us in the instant case is very different from that presented in *Bridges* because, in that case, the father had legitimate reasons for undertaking to adopt his child and, in turn, the child benefitted from the adoption. In the present case, however, no beneficial consequences will attach as a result of an adoption that these children do not already enjoy as Green's legitimate children.

Furthermore, in *Stambaugh v. Child Support Admin.*, 323 Md. 106, 591 A.2d 501 (1991), we held that it is against public policy for a parent to use her children's right to child support as a bargaining chip in procuring her former spouse's consent to the adoption of their children by her present husband. We said that "the duty to support one's minor children may not be bargained away or waived." *Id.* at 111, 591 A.2d 501. We further concluded that there is a "strong policy in this State forbidding payments of compensation to a natural parent in exchange for that parent's consent to an adoption." *Id.* at 112, 591 A.2d 501. *See also Stancill v. Stancill*, 286 Md. 530, 535, 408 A.2d 1030 (1979) (stating that "the chancellor cannot be handcuffed in the exercise of his duty to act in the best interests of a child by any understanding between parents"). Relief from past, and future, obligations to pay child support constitutes such prohibited compensation. Unlike the children in the instant case, however, the children in *Stambaugh* had a stepfather who took over responsibility for their support.

The vast majority of other jurisdictions hold that a natural parent may not adopt his or her own legitimate children. *See, e.g., In re Adoption of Kohorst*, 75 Ohio App.3d 813, 600 N.E.2d 843, 847 (1992); *Matter of Estate of Baxter*, 827 P.2d 184, 187 (Okl.App.1992); *In re Adoption of Graham*, 63 Ohio Misc. 22, 409 N.E.2d 1067 (1980); *Leake v. Grissom*, 614 P.2d 1107, 1109 (Okl.1980); *Campbell v. Kindred*, 26 Or.App. 771, 554 P.2d 599, 600–01 (1976); *Marshall v. Marshall*, 196 Cal. 761, 239 P. 36, 38 (1925). *But see contra McDonald v. Hester,*

115 Ga.App. 740, 155 S.E.2d 720 (1967); *Petition of Curran,* 314 Mass. 91, 49 N.E.2d 432, 434 (1943).

■ Because the adoption of the Green children by their natural mother is legally ineffective under Maryland's adoption statute, we must further determine, in light of the provisions of § 5–325, whether the final decree may be vacated more than one year after its entry. We hold that it can. As the circuit court should not have granted the adoption under the governing law, it is voidable and subject to collateral attack at any time. Accordingly, so viewing the proceeding in this case as one collaterally attacking a voidable adoption decree, we conclude that the status of the Green children never changed, in fact or by law, as a result of the purported adoption, and that § 5–325 has no application in the circumstances of this case.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*