BENTON, J.
L.J.R., the natural father of L.J.R. II (the child), appeals the final judgment granting the petition for adoption by birth-parent filed by T.T., the child’s natural mother. The final judgment granting T.T.’s petition expressly terminates L.J.R.’s parental rights and declares T.T. the child’s sole parent. We reverse.
The petition for adoption by birthparent alleged that the child was born out of wedlock on April 29, 1996, and that
a. The consent of the birth father should not be required because: the birth father has not provided the child with support in a repetitive and customary manner.
b. The consent of the birth father should be excused ... because of prolonged, unexplained absence, unavailability, incapacity, or another circumstance constituting unreasonable withholding of consent.
In prison in Massachusetts, L.J.R. responded to the petition, admitting paternity and denying that he had abandoned the child.
Adoption may be viewed as a means of creating “a legal relationship of parent and child between persons who were not so related by nature or law.” In re Estate of Baxter, 827 P.2d 184, 187 (Okla.Ct.App.1992). It has been said that “if the natural relationship of parent and child [already] exists, there is no need for a legally created relationship.” Leake v. Grissom, 614 P.2d 1107, 1109 (Okla.1980).
“[A]doption” has been defined by some courts as the establishment or creation of a legal relationship of parent and child between persons who were not so related by nature or law, whereupon the person adopted becomes the legal heir of his or her adopter, and the rights and duties of domestic relation with the adoptee’s natural parents are terminated. It has been said that adoption is the legal equivalent of biological parenthood, so that a decree of adoption renders the adoptee, for all intents and purposes, the child of the adoptive parent.
Mitchell Waldman, 2 Am.Jur.2d Adoption § 1 (1994) (emphasis supplied and footnotes omitted). See also 2 C.J.S. Adoption of Persons § 2 (1972) (“The purpose of an adoption is to change the status of the child in relation to its adoptive parents, and to create a new status, a new relationship of parent and child, and to make the adopter as genuinely the parent of the child and the child as genuinely the offspring of the adopter as can be accomplished in law.” (emphasis supplied and footnotes omitted)).
Florida does not, however, disqualify birth parents from adopting.[1] Among those whom section 63.042(2)(b), Florida Statutes (1997), names as persons who may adopt is an “unmarried adult, including the birth parent of the person to be adopted.” The Legislature has determined that it might be in the best interests of a non-marital child to be adopted, for example, by a birth parent who returns after an absence or recovers from circumstances that earlier led to proceedings terminating parental rights, see In re T.G.T, 433 So.2d 11 (Fla. 1st DCA 1983); Green v. State, Dep’t of Health and Rehabilitative Servs., 412 So.2d 413 (Fla. 3d DCA 1982), or by a birth parent and the birth *1285 parent’s spouse. See Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); McDonald v. Hester, 115 Ga. App. 740, 155 S.E.2d 720 (1967). But the present case
is not a situation analogous to stepparent adoption, wherein a stepparent adopts his stepchild.... Nor is it like adoption of a child whose parents’ rights have been terminated due to neglect or dependent status of the child. In those situations the child is not deprived of any rights or parental obligations, but, rather, the child is acquiring all the rights of which he or she was previously deprived. Therefore, the goals of the adoption laws are fulfilled, and a new legal family relationship is created which before did not exist....
In re Adoption of Kohorst, 75 Ohio App.3d 813, 600 N.E.2d 843, 848-49 (1992). By statute, a judgment of adoption “creates the relationship between the adopted person and the petitioner ... that would have existed if the adopted person were a blood descendant of the petitioner born within wedlock.” § 63.172(1)(c), Fla.Stat. (1997). This provision “purports to endow adopted children with an altered status[2] as a result of the adoption, the objective being to add, or at least to substitute, a new legal relationship in place of the old one.” Green v. Sollenberger, 338 Md. 118, 656 A.2d 773, 777 (1995). In the present case, however, scant or “no new rights or obligations attach as a result of the adoption.” Id.
The principal effect of the final judgment of birthparent adoption now under review is to terminate the parental rights and obligations of the father, L.J.R. While proceedings to terminate parental rights are ordinarily instituted by the Department of Children and Family Services, the statute also authorizes any “person who has knowledge of the facts” to file a petition for termination of parental rights. § 39.461(1), Fla.Stat. (1997). That is how T.T. might have proceeded here.[3] Granting her petition for adoption by birthpar-ent
conferred few or] no additional rights, privileges, or benefit upon the child[ ]. The termination of the legal relationship between the child[ ] and [his] natural and legal father would eliminate that inheritance and the responsibility of the father to support, maintain, and educate his minor ehild[ ] which he shares with the natural mother.
In re Adoption of Graham, 63 Ohio Misc. 22, 409 N.E.2d 1067, 1069 (Comm. Pleas 1980). Like the Supreme Court of Oklahoma, “we do not believe .... that the Legislature contemplated the use of adoption proceedings for the sole purpose of terminating parental rights; the Legislature provided a [separate] procedure for termination of parental rights.... ” Gilbertson v. Gilbertson, 498 P.2d 1381, 1384 (Okla.1972).
In Florida, moreover, the Legislature has specifically limited the ability to terminate the parental rights of only one parent. Under section 39.469(6), Florida Statutes (1997), the
parental rights of one parent may be severed without severing the parental rights of the other parent only under the following circumstances:
*1286 (a) If the child has only one surviving parent;
(b) If the identity of a prospective parent has been established as unknown after sworn testimony;
(c) If the parent whose rights are being terminated became a parent through a single-parent adoption;
(d) If the protection of the child demands termination of the rights of a single parent; or
(e) If the parent whose rights are being terminated meets the criteria specified in s. 39.464(l)(d).
While it terminated “[a]ll legal relations between the adoptee and the birth father,” but not the birth mother, the trial court did not find that any of these statutory criteria[4] had been met.
Proceedings to terminate parental rights under chapter 39 differ from adoption proceedings in other respects. “The court shall appoint a guardian ad litem to represent the child in any termination of parental rights proceedings.... ” § 39.465(2)(a), Fla.Stat. (1997). Concurring in Stefanos v. Rivera-Berrios, 673 So.2d 12, 14 (Fla.1996), now Chief Justice Harding described other procedural protections that are part and parcel of statutory proceedings to terminate parental rights:
Parental rights can only be terminated under certain circumstances. See § 39.464, Fla.Stat. (1991) (grounds for termination of parental rights include voluntary relinquishment, abandonment, severe or continuing abuse or neglect, and egregious abuse). Certain procedural safeguards also apply to termination proceedings: Affected parties must be served notice and a copy of the petition for termination of parental rights. § 39.462(1), Fla.Stat. (1991). Parents have the right to have counsel present at each stage of the proceeding; the court appoints counsel for insolvent persons. § 39.465(1), Fla.Stat. (1991). An advisory hearing is held in order to inform the parties of their rights under section 39.465. § 39.466, Fla.Stat. (1991). The need for termination of parental rights must be established by clear and convincing evidence at an adjudicatory hearing. § 39.467(1), Fla.Stat. (1991). The judge must enter a written order explaining the relevant findings of fact and conclusions of law. § 39.467(7), Fla. Stat. (1991). Any party involved in the proceeding who is affected by the order *1287 of the court may appeal to the appropriate district court of appeal. § 39.478, Fla.Stat. (1991). Thus, Florida law does not take the termination of parental rights lightly and provides adequate due process safeguards.
T.T. offers no good reason why L.J.R. and the parties’ child should be deprived of these statutory protections here. See generally Kingsley v. Kingsley, 623 So.2d 780 (Fla. 5th DCA 1993) (finding it error (which the majority deemed harmless on the facts) to try a termination of parental rights case together with an adoption case).
We hold that T.T. cannot circumvent statutory restrictions on terminating LJ.R.’s parental rights while retaining her own by petitioning for adoption as a single birth parent. Even in adoption proceedings where children gain adoptive parents and parental rights of natural parents are severed, moreover, our supreme court requires clear and convincing proof be adduced to “terminate a parent’s right in a natural child.” In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995). Accord In re R.W., 495 So.2d 133, 135 (Fla.1986). See also Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). See generally Padgett v. Department of Health and Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991). There is no indication that the trial court applied this heightened standard here.
In reversing without prejudice to T.T.’s instituting proceedings under chapter 39, we express no view as to the merits of the trial court’s finding of “[ajbandonment as evidenced by prebirth and postnatal conduct” notwithstanding “certain minimal assistance” L.J.R. provided. We likewise have no occasion to address the fact that T.T. depends in part on public assistance to support the child. In the event termination of parental rights proceedings are instituted, however, we note that the statute requires appointment of a guardian ad litem and that, even in the event statutory abandonment is proven, the trial court must determine whether termination of parental rights is in the child’s “manifest best interests.” § 39.4612, Fla.Stat. (1997). See generally Peregood v. Cosmides, 663 So.2d 665 (Fla. 5th DCA 1995) (reversing order dismissing complaint to vacate adoption by mother to which father had consented where purpose and effect of adoption were to deprive adoptee of paternal support).
Reversed.
VAN NORTWICK and PADOVANO, JJ., concur.

. Without diminishing a consenting mother's rights, a natural father may obviate the need for paternity proceedings ' in some circumstances by adopting. See In re Jessica W., 122 N.H. 1052, 453 A.2d 1297 (1982); In re Adoption of a Child by A.R., 152 N.J.Super. 541, 378 A.2d 87 (Prob.Div.1977); In re A.J.J., 108 Misc.2d 657, 438 N.Y.S.2d 444 (1981).

. Since this child was born out of wedlock, it may be that adoption by its birth mother would not leave its legal status completely unaffected. See generally Bridges v. Nicely, 304 Md. 1, 497 A.2d 142 (1985) (holding father could adopt non-marital child on theory that child acquired greater rights as an adopted child than he would have had if he had merely been acknowledged under the legitimation statute); In re Curran, 314 Mass. 91, 49 N.E.2d 432 (1943) (finding no legal impediment to mother’s adoption of non-marital child and changing its surname to hers); but cf. Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (striking down on equal protection grounds statute rendering illegitimate child ineligible to inherit from father by intestacy); § 732.108, Fla.Stat. (1997).

 Alternatively, T.T. might have sought support for the child from L.J.R. by proceeding under sections 742.031 and 61.30, Florida Statutes (1997).

. Nor did T.T. adduce evidence that could conceivably support a finding justifying termination only of L.J.R.’s parental rights under subsubsections (a) through (d). Subsubsection (e) incorporates by reference section 39.464(l)(d), Florida Statutes (1997), which provides:
(d) When the parent of a child is incarcerated in a state or federal correctional institution and:
1. The period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years;
2. The incarcerated parent has been determined by the court to be a violent career criminal as defined in s. 775.084, a habitual violent felony offender as defined in s. 775.084, or a sexual predator as defined in s. 775.21; has been convicted of first degree or second degree murder in violation of s. 782.04 or a sexual battery that constitutes a capital, life, or first degree felony violation of s. 794.011; or has been convicted of an offense in another jurisdiction which is substantially similar to one of the offenses listed in this paragraph. As used in this section, the term "substantially similar offense” means any offense that is substantially similar in elements and penalties to one of those listed in this paragraph, and that is in violation of a law of any other jurisdiction, whether that of another state, the District of Columbia, the United States or any possession or territory thereof, or any foreign jurisdiction; and
3.The court determines by clear and convincing evidence that continuing the parental relationship with the incarcerated parent would be harmful to the child and, for this reason, that termination of the parental rights of the incarcerated parent is in the best interest of the child.
According to his mother, L.J.R. was sentenced in Massachusetts to three to five years for a sexual battery offense comprised of unspecified elements. Cf. Dautel v. State, 658 So.2d 88 (Fla.1995).